JOAN F. JANIK AND NORMAN L. JANIK, APPELLANTS, V. JOHN W. GATEWOOD, M.D., APPELLEE.

444 N.W.2d 900

Filed September 1, 1989.   No. 87-891.

Dana C. Bradford III, of Bradford, Coenen, Ashford & Stangl, for appellants.

Patrick G. Vipond, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff-appellant Joan F. Janik filed this malpractice action against defendant-appellee, John W. Gatewood, M.D. Although plaintiff's husband was named as an additional plaintiff, this opinion will be written as if Joan Janik were the sole plaintiff. On May 10, 1984, defendant performed a bilateral subcutaneous mastectomy with reconstruction on plaintiff. The surgery was, necessitated by a medical condition called fibrocystic disease, which had manifested itself in the form of reoccurring cysts in plaintiff's breasts. Plaintiff alleged in her petition that defendant deviated from the standard of care required of him in the surgery and postoperative treatment. Defendant denied any negligence.

After the jury returned a verdict in defendant's favor, plaintiff moved for a new trial, and the motion was denied. Plaintiff then timely appealed, assigning the following as error: (1) that the jury "disregarded material and uncontroverted evidence which clearly showed that the Appellee had breached the standard of care he owed the Appellant . . ." and (2) that the trial court erred in limiting the scope of plaintiff's cross-examination of defendant's expert witness.

The record shows that on May 1, 1984, plaintiff agreed to have defendant perform the surgery at the suggestion of her physician, John W. Monson, who was also defendant's associate. Defendant did not discuss the risk of complications with her, but Monson testified that he discussed with her the possibility that the prostheses might be rejected by her body. Defendant performed the operation on May 10, 1984.

Thereafter, on May 18, 1984, defendant examined plaintiff in his office. He removed staples from the surgery wounds and observed a discharge of fluid from the wound on the left breast. He testified that he thought it was serum, a normal byproduct of surgery. Plaintiff testified that the left prosthesis was exposed through the wound at this time, although defendant stated that he first observed the prosthesis through the wound on June 12, 1984, during plaintiff's seventh postoperative visit. Defendant resutured the wound at that time in an attempt to save the prosthesis. A few days later the wound had enlarged, and defendant resutured it a second time.

Monson examined plaintiff on June 21 and 28, 1984, because defendant was out of the office. Upon defendant's return, Monson and defendant agreed that the left wound should be sutured once more. Defendant resutured it on July 3, 1984. Shortly thereafter, defendant examined plaintiff and discovered that the wound still had not closed. Defendant resutured it a fourth time.

By July 18, 1984, the left wound had closed and appeared to be healing. The wound continued to look good on plaintiff's next two visits. On August 8, 1984, all but one suture had been removed. Still, a drop of clear yellow fluid was discharged from the left wound. Plaintiff testified that she told the defendant that every few days she would experience swelling and a discharge of fluid from the wound.

On August 17, 1984, the last suture was removed. A small opening in the left wound remained. Plaintiff testified that she again informed defendant that every few days she would experience swelling and a discharge of fluid from the left wound. The wound was resutured with a single suture on August 27, 1984. That suture had to be replaced the following week when the wound failed to remain closed.

On September 20, 1984, Monson examined plaintiff at her request. The last time he had seen her was on June 28, 1984. Monson testified that the left wound, which had swelled considerably since that time, broke open during his examination, discharging a large amount of fluid. He stated that he thought the prosthesis was infected and had to come out. He later discussed this with the defendant, who removed the left prosthesis on October 3, 1984.

On October 22, 1984, plaintiff visited defendant's office for the last time and asked for and obtained her medical files. On November 2, 1984, she consulted Steven Black, M.D., a plastic and reconstructive surgeon. Black advised her that reconstructive surgery on the left breast should wait until the inflammation subsided and that the right prosthesis was riding high and eventually would have to be lowered.

On December 28, 1984, plaintiff visited Black again, complaining of a discharge of fluid from her left breast. Black recommended a biopsy, and he took a culture on January 10,

1985. No culture had been taken by defendant before that time because defendant thought a culture was unnecessary as a part of plaintiff's postoperative treatment. On the same day Black took the culture, Black also placed plaintiff on antibiotics. Defendant testified that he had not previously placed plaintiff on antibiotics because he thought antibiotics were not necessary, other than immediately following surgery when he prescribed the antibiotic Keflex.

The culture revealed that an atypical microorganism was growing in plaintiff's left breast. Philip W. Smith, M.D., a specialist in infectious diseases, confirmed that plaintiff had an uncommon infection. Smith subsequently treated plaintiff's infection with various antibiotics. On January 22, 1985, Black removed the right prosthesis to eradicate the entire infection. Plaintiff was placed on intravenous antibiotics and remained in the hospital for 30 days. Later that year, she moved with her family to Pennsylvania, where she came under the care of Richard M. Levine, M.D., a plastic and reconstructive surgeon.

Plaintiff's first assignment of error merely states that "[t]he jury disregarded material and uncontroverted evidence which clearly showed that the Appellee had breached the standard of care he owed the Appellant Joan Janik." Such a statement does not direct us to what action of the trial court plaintiff considers erroneous and makes the assignment almost impossible to consider. We have determined, however, that if plaintiff is contending that the evidence is insufficient to support a verdict for defendant, that contention has no merit. The evidence supporting a verdict for plaintiff was contested in every respect, and evidence was offered on behalf of defendant controverting evidence offered by plaintiff. A jury question was presented on all issues raised by plaintiff. The credibility of the witnesses and the weight to be given their testimony is for the jury. Insofar as the sufficiency of the evidence is concerned, a verdict based on conflicting evidence will not be set aside unless clearly wrong. *Schroll v. Fulton*, 213 Neb. 310, 328 N.W.2d 780 (1983). Plaintiff's first statement is without merit.

A more difficult question is presented by plaintiff's second assignment of error, which contends that the trial court erred in sustaining defendant's objections to a substantial portion of

plaintiff's cross-examination of defendant's expert witness.

On direct examination, defendant's expert witness, Mario Baccari, M.D., stated that he was certified in two specialties, general surgery and plastic surgery; that he had reviewed the depositions of the parties and other doctors who testified; and that he had examined the medical records of the surgery performed by defendant. Baccari testified on direct examination as follows:

> Q. Doctor, do you have an opinion, based upon a reasonable degree of medical certainty, as to whether or not Dr. Gatewood deviated from the standard of care for surgeons in not prescribing prophylactic antibiotics before surgery?

> A. . . . . [Y]ou are talking about antibiotics either given before the surgery or during the surgery? There is a question as to whether those actually do what people think they should be doing. I don't think he deviated in that regard.

Baccari also testified as follows:

> Q. In reviewing how the operation was performed by Dr. Gatewood, do you have an opinion as to whether or not he followed the standard of care for general surgeons or reconstructive surgeons in the manner and method he performed that surgery?

> A. In the way he performed the surgery, I have no problem at all.

Baccari concluded that he thought the right prosthesis should not have been removed by Black.

During the cross-examination of defendant's expert by plaintiff, the expert was asked: "[B]ased upon a reasonable degree of medical certainty, and based upon a review of all of the documents that you have referred to and read in this case, did Dr. Gatewood in any manner breach the standard of care?" Defendant's objection to this question was sustained, as were objections to specific questions exploring the manner in which defendant conducted plaintiff's postoperative treatment. The court sustained objections to questions concerning defendant's resuturing of the wound and the expert's opinion on the risk of infection in an open wound. In short, the trial judge confined

plaintiff's cross-examination of defendant's expert to the issues surrounding the physical acts of the surgery performed by defendant and the later removal of the right prosthesis by Black. Plaintiff now challenges this ruling.

It is true that " '[a]bsent an abuse of discretion, a trial judge's ruling regarding the admissibility of expert testimony will not be reversed.' " *Palmer v. Forney*, 230 Neb. 1, 7, 429 N.W.2d 712, 716 (1988). This court has observed that in order to find a judicial abuse of discretion, the reasons or rulings of a trial judge must be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition through the judicial system. *Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56 (1988); *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986).

Defendant contends that the trial court properly limited cross-examination strictly to the scope of the direct examination, and for this reason the ruling should not be disturbed. Plaintiff asserts that by excluding the line of questioning concerning the manner in which defendant conducted plaintiff's postoperative treatment of the left wound, plaintiff was unable to elicit testimony necessary to discredit, qualify, or render improbable the opinion expressed by defendant's expert witness on direct examination. Thus, the dispositive question here is whether the trial judge, in limiting cross-examination as he did, abused his discretion so as to prevent plaintiff from eliciting testimony that would affect the credibility of defendant's expert witness.

Cross-examination in trials in our courts is generally controlled by the provisions of Neb. Evid. R. 611 (Neb. Rev. Stat. § 27-611 (Reissue 1985)), which provides in part: "(2) Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The judge may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Rule 611(2) permits cross-examination on matters affecting the credibility of a witness and thus reflects the earlier holding of this court in *Scofield v. Haskell*, 180 Neb. 324, 142 N.W.2d 597 (1966).

In addition, where testimony is given by a witness on direct examination and that testimony creates an inference favorable

to the party producing the witness, anything within the knowledge of that witness tending to rebut the inference is admissible on cross-examination, and the opposing party is entitled to pursue that line of cross-examination as a matter of right. *Scofield v. Haskell, supra*.

The nature of the evidence sought to be elicited from defendant's expert was apparent from the context within which the questions were asked. Neb. Rev. Stat. § 27-103 (Reissue 1985). See *Schmidt v. Schmidt*, 228 Neb. 758, 424 N.W.2d 339 (1988). The ruling of the trial judge denied plaintiff the opportunity to explore whether defendant's expert in fact held any contrary opinions concerning the way in which defendant conducted plaintiff's postoperative treatment. Consequently, plaintiff was unfairly deprived of the right to test either the value of the expert's opinion or the degree of credibility to be attached to his testimony. The action of the trial court in excluding such evidence affected a substantial right of plaintiff.

Defendant's expert was qualified on direct examination as an expert in both general and plastic surgery. He stated that he reviewed the depositions of defendant and of the other doctors who served as witnesses. He testified about preoperative antibiotics, the actual surgery, and even the postoperative treatment of the right breast by another physician. As previously stated, the expert testified that in his opinion, defendant followed the standard of care in the way defendant performed the surgery.

The expert's opinion, taken together with his above testimony, created an inference that he was also of the opinion that defendant met the standard of care in the way defendant conducted plaintiff's postoperative treatment. Plaintiff was denied the opportunity to rebut the inference when plaintiff was not allowed to establish the limits of the opinion held by defendant's expert witness.

The ruling by the trial judge was an abuse of discretion. Plaintiff should have been permitted to fully cross-examine defendant's expert and should not have been confined strictly to examination concerning only the physical act of the surgery itself. The limitation of plaintiff's cross-examination was error requiring a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.