STATE OF NEBRASKA, APPELLEE, V. ULYSSES L. CRIBBS, APPELLANT.
469 N.W.2d 108

Filed April 25, 1991.    No. 89-1299.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

WHITE, J.

Ulysses L. Cribbs, the defendant-appellant, was acquitted by

reason of insanity on charges of first degree murder and attempted murder. He appeals an order of the district court releasing the record of his review hearing, including psychiatric reports and medical and mental evaluations. We affirm.

## BACKGROUND OF THE CASE

In 1977, Cribbs was charged with first degree murder and attempted first degree murder following a shooting incident in a public restaurant in Omaha which resulted in the death of one person and the wounding of 25 others. Cribbs was acquitted by reason of insanity and was committed to the Lincoln Regional Center.

Under state law the trial court shall annually review the status of a person acquitted on grounds of insanity. See Neb. Rev. Stat. § 29-3703(1) (Reissue 1989). All records in the original proceeding or review hearings shall be made a part of the official record in the underlying case. See Neb. Rev. Stat. § 29-3706 (Reissue 1989). After a review hearing on August 25, 1989, the district court entered an order on September 5, finding that there was clear and convincing evidence that Cribbs remained mentally ill and continued to be dangerous to himself and others, requiring continued treatment, observation, and supervision.

On September 20, a motion was filed on behalf of four daughters of one of the shooting victims, as "interested parties," seeking an order allowing the court reporter to release "any and all evidence, psychiatrist reports, medical and mental evaluations, incident reports or other documents that have been made a part of the official record herein." Following a September 28 hearing, the district court sustained the request for a copy of exhibit 1, which had been received in evidence at the August 25 hearing. The court ordered that a copy not be released until disposition of the appeal to this court.

## DISCUSSION

Cribbs' sole assignment of error asserts that the district court erred in releasing the psychiatrist reports and medical and mental evaluations of the defendant. He argues that state law concerning the release of information treats differently those persons acquitted on grounds of insanity and those committed

civilly and that the law is therefore unconstitutional. At oral argument Cribbs' counsel asserted that the procedure used in this case was incorrect and that the interested parties do not have standing to request the records.

We have recently reaffirmed the constitutionality of the acquitted persons statutes in relation to the civil commitment statutes. See, *State v. Simants,* 213 Neb. 638, 330 N.W.2d 910 (1983); *Tulloch v. State, ante* p. 138, 465 N.W.2d 448 (1991). We found in both cases that a rational basis existed for treating acquitted persons differently from mentally ill dangerous individuals who have been committed civilly. Cribbs' appeal has no merit on this basis.

However, we find further that the statute complained of here, § 29-3706, is not applicable to this case. The statute does not govern the release of records, but merely makes all pleadings, evidence, and orders part of the official record in the underlying case. The statute does not purport to regulate release of trial records. As such, the release of these records is governed by the common-law right of access to judicial records, a right which has been recognized by the U.S. Supreme Court.

Neb. Ct. R. of Official Ct. Reporters 4f (rev. 1989) states as follows:

> Upon request of any person not a party to a suit, the court reporter shall, if so directed by the trial judge, furnish to such person, as expeditiously as possible, a complete typewritten transcript, or any portion thereof, of any trial or proceedings. The compensation and payment therefor shall be as prescribed in [section] e. above, as shall be the certification by the reporter.

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978). In that case, the court of appeals had reversed the district court and ordered the release of President Nixon's "Watergate tapes," which had been admitted into evidence and played for the jury. The court of appeals had held that Nixon's right of privacy expectation had disappeared with the public playing of the tapes and the publication of

transcripts.

While the Supreme Court reversed the court of appeals and held that the tapes could not be released, the Court did so because the passage of the presidential recordings act created an alternative means for public access to the tapes. The Court stated that the right to inspect and copy judicial records is not absolute, but that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes," such as in divorce cases. 435 U.S. at 598.

> It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate. The few cases that have recognized such a right agree that the decision as to access is one best left to the *sound discretion of the trial court*, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.

(Emphasis supplied.) 435 U.S. at 598-99.

The Court held that since it assumed that the common-law right of access applied to the tapes, it did not "undertake to delineate precisely the contours of the common-law right," 435 U.S. at 599, but noted that this was a "concededly singular case." 435 U.S. at 608.

In 1980, the U.S. Court of Appeals for the Second Circuit, faced with a request for the release of tapes played for the jury in the "Abscam" cases, noted that the Supreme Court, in the Watergate tapes case, had explicitly recognized the common-law right to inspect and copy judicial records, but had rejected it because the right had been modified by Congress' passage of legislation which specifically restricted public access. *Application of National Broadcasting Co., Inc.*, 635 F.2d 945 (2d Cir. 1980). The court of appeals held that the Supreme Court's decision did not prevent the copying and dissemination of items which had been publicly disclosed by their admission into evidence at a public session of court. In the absence of a statute, the Supreme Court recognized a " 'presumption—however gauged—in favor of public access to

judicial records'. . . with the disclosure in a particular case normally left to the 'informed discretion' of the courts . . . after 'weighing the interests advanced by the parties in light of the public interest and the duty of the courts.' " *Id.* at 950. The court of appeals agreed with the presumption in favor of public inspection.

When a federal district court held that videotapes made by a kidnapper would not be released to the public, it noted that the Supreme Court

> emphasized that the decision as to access to public records is one to be made by the trial court in light of the relevant facts and circumstances of the particular case . . . . The *Watergate* Court directs us to exercise "an informed discretion . . . with a sensitive appreciation of the circumstances," but we are cautioned that exercising our responsibility "does not permit copying on demand."

*Application of KSTP Television*, 504 F. Supp. 360, 361 (D. Minn. 1980). The court held that the tapes, parts of which had been played during the trial, would support sensationalism if released.

A denial of an application by CBS for copies of audiotapes admitted into evidence in a mail fraud trial was affirmed by the U.S. Court of Appeals for the Eighth Circuit, which found that the district court did not abuse its discretion in denying the application. See *United States v. Webbe*, 791 F.2d 103 (8th Cir. 1986). The court found that the common-law right of access to records of judicial proceedings and evidence does not necessarily include copying of the tapes. "[T]he decision as to access is properly handled on an ad hoc basis by the district judge, who is in the best position to recognize and weigh the appropriate factors on both sides of the issue." *Id.* at 107.

Using the guidance of these decisions, we find that our standard of review of the district court's decision to release the records is whether the trial court abused its discretion.

> "[A] judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in

matters submitted for disposition through a judicial system."
*Von Tersch v. Von Tersch*, 235 Neb. 263, 273, 455 N.W.2d 130, 136 (1990). See, also, *Janik v. Gatewood*, 233 Neb. 298, 444 N.W.2d 900 (1989).

In Cribbs' case, the report in contention is from the Lincoln Regional Center and concerns his treatment and progress. It was offered and received in evidence at the August 25, 1989, review hearing, which was an open hearing. The report had been stipulated to by both the State and the defendant.

Referring to the *Application of National Broadcasting Co., Inc.*, case, the district court found that none of the exceptions to the release of information which were recognized there—"to gratify public spite or promote public scandal or harm the litigant's competitive standing or serve improper purposes" —applied to the release of the report about Cribbs.

While we encourage the district court to weigh the conflicting rights of the public and the defendant and to make explicit in the record the factors used in the decision to release evidence from judicial proceedings, we do not find that the district court's release of the records is clearly untenable or has deprived Cribbs of a substantial right. The district court did not abuse its discretion, and the order releasing the report is affirmed.

AFFIRMED.

GRANT, J., not participating.