# In re Sealed Documents

[772 A.2d 518]

No. 01-103

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.),
Specially Assigned**

Opinion Filed March 23, 2001

*Philip H. White* and *Kathleen B. O'Neill* of *Wilson & White, P.C.*, Montpelier, and *Robert B. Hemley* and *Rebecca C. Raskin* of *Gravel & Shea*, Burlington, for Appellants.

*William H. Sorrell*, Attorney General, and *John Treadwell* and *Stephanie Ilberg*, Assistant Attorneys General, Montpelier, for State of Vermont.

*Philip T. McLaughlin*, Attorney General, and *N. William Delker*, Senior Assistant Attorney General, Concord, New Hampshire, for State of New Hampshire.

**Skoglund, J.** Appellants the Associated Press, The Herald Association, d/b/a The Rutland Herald, Times Argus Association d/b/a The Times Argus, and Mt. Mansfield Television, Inc., d/b/a WCAX/WPTZ appeal from a district court order denying a motion to unseal ten search warrants and related materials involving searches of the persons and the residences of Robert Tulloch and James Parker in Chelsea, Vermont. Appellants contend they are entitled to examine the subject documents under Vermont statutory law — specifically 4 V.S.A. § 693 providing for public inspection and examination of court records — as well as under the common law, and the First Amendment. As explained more fully below, we conclude that appellants have a presumptive right of access under the statute, which may be overcome only through a specific showing of substantial harm to public or private interests. To afford the trial court a reasonable opportunity to render a decision supported by fact-specific findings under the standards and procedures described herein, we remand for further proceedings.

## I.

The material facts are undisputed. On January 27, 2001, the police discovered the deceased bodies of Half and Susanne Zantop in their Hanover, New Hampshire home. Autopsies revealed that both deaths were homicides. The following day, a New Hampshire district court judge approved an application for a search warrant for the Zantop residence, and granted a motion to seal the warrant, warrant application, supporting affidavit, and motion.

Three weeks later, on February 16, the New Hampshire court issued arrest warrants for Robert Tulloch and James Parker, residents of Chelsea, Vermont, in connection with the homicides. On the same day, the Vermont Attorney General's Office applied for four search warrants, based upon information provided by New Hampshire law enforcement authorities, and simultaneously moved to seal the application, warrant, supporting affidavits, and inventory of items seized. The trial court (Judge Manley) issued the search warrants and granted the State's motion to seal. The warrants were executed and returned, together with inventories of items seized.

The following day, February 17, the Vermont Attorney General's Office applied for five additional search warrants, and moved to seal the warrant, supporting affidavits, and inventories. Judge Manley issued the warrants and granted the State's motion. The warrants were executed and returned, together with inventories of items seized.

On February 19, the two suspects, Parker and Tulloch, were arrested in Indiana. Both have since been returned to New Hampshire, where they remain incarcerated. Both have been charged with two counts of first-degree murder, although neither has yet been indicted by the grand jury.

On February 23, the New Hampshire district court issued an order requiring the release of certain previously sealed information in the New Hampshire arrest and search warrant applications. The court's ruling is pending on appeal.

On February 24, Judge Zimmerman (Judge Manley having become unavailable) granted the State's application for a tenth search warrant, as well as a motion to seal the warrant, affidavits, and inventory. A return and inventory for the tenth warrant had not been filed at the time of these proceedings.

This case commenced on February 23, when a reporter for The Times Argus moved for limited intervention in the Vermont proceeding in order to request access to the previously sealed search warrants and related materials. Additional motions for limited

intervention to unseal the subject documents were later filed on behalf of the other appellants. At the expedited hearing on appellants' motion, the State advanced general arguments in favor of nondisclosure, asserting that the investigation was ongoing, as evidenced by the succession of search warrants, that evidence was still being gathered and analyzed, and that unsealing the records could jeopardize the discovery of additional evidence and allow potential witnesses to tailor their statements to the evidence.

Following the hearing, the trial court (Judge Zimmerman) issued a written order and decision. The court concluded: (1) the First Amendment does not provide a right of access to pre-indictment search warrant materials; (2) the search warrant materials are not public records under 4 V.S.A. § 693 because they do not relate to a "cause" in the district court, and are not "records of the court" subject to disclosure; and (3) although there is a qualified common-law right of access to judicial records, the State had demonstrated sufficient cause to retain the records under seal. The latter conclusion was based upon the court's finding that the public interest is not furthered through piecemeal dissemination of information that cannot be tested through the adversarial process, and that the materials relate to an ongoing investigation and reference a number of items of potential evidentiary value that have not been disclosed to the public, some of which are awaiting forensic evaluation. The trial court thus denied appellants' request to unseal the search warrants and related materials. This appeal followed.[1]

We conclude as follows. The trial court's rejection of appellants' constitutional claim was amply supported. The great weight of authority holds that pre-indictment search warrant materials have not "historically been open to the press and general public," *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986), and therefore access is not compelled under the First Amendment. See, e.g., *Seattle Times Co. v. Eberharter*, 713 P.2d 710, 715 (Wash. 1986) ("the deeply-rooted historical tradition and the role of public access in furthering the process itself . . . are not present in the probable cause determination [for issuance of search warrants]"); see also *In re 2 Sealed Search Warrants*, 710 A.2d 202, 205-09 (Del. Super. Ct. 1997) (collecting and discussing cases). Ample authority also supports the trial court's decision to apply a qualified "common law" right of access,

---

[1] We have not relied on the statement of facts in appellants' reply brief. Therefore, the State's motion to strike the statement as containing facts outside the record is denied.

156

see, e.g., *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989), although some have questioned the logic of finding such a right absent an historically rooted basis for such a claim. See, e.g., *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989) (refusing to recognize common-law right of access to pre-indictment search warrant materials "when there is neither a history of access nor an important public need justifying access").

■ We need not ultimately resolve either the First Amendment or common law issues at this time, however. We conclude, instead, that Vermont statutory law provides a general right of access to the materials subject to recognized exceptions under the law. Our tradition of addressing issues of constitutional significance only when the matter is squarely and necessarily presented counsels restraint and forebearance as to the broader questions of access on these alternative grounds. See *In re Newsday, Inc.*, 895 F.2d 74, 75 (2d Cir. 1990) (declining to address First Amendment claim where qualified access to search warrant materials available under common-law theory); *Herald Ass'n v. Ellison*, 138 Vt. 529, 533, 419 A.2d 323, 326 (1980) (noting the "wisdom of our traditional rule of self-restraint — that we do not needlessly decide constitutional issues").

## II.

■ In pertinent part, 4 V.S.A. § 693 provides that the district court clerk

> shall keep on file and preserve all process, pleadings and papers relating to causes in the district court which, together with the records of the court, shall be subject to inspection and examination by parties interested in those causes and, upon tender of the legal fees, he shall furnish, or cause to be furnished, duly certified copies of any records, pleadings, process or papers; except that he shall not disclose any materials or information required by law to be kept confidential.

Our decisions have made it clear that § 693 does not merely describe the record-keeping duties of the clerk of the court, but rather provides an affirmative right of public access to court records. As we explained in *State v. Tallman*, 148 Vt. 465, 537 A.2d 422 (1987), which addressed a newspaper's motion to unseal an affidavit of probable cause, "[a]fter an affidavit is reviewed by a court, *access to the document is governed by 4 V.S.A. § 693.*" *Id.* at 472, 537 A.2d at 426 (emphasis added); see

also *Herald Ass'n v. Judicial Conduct Bd.*, 149 Vt. 233, 241, 544 A.2d 596, 601 (1988) (*Tallman* "held that the district court statute gave the public a right of access to affidavits of probable cause in criminal cases").[2]

The threshold inquiry is thus whether the search warrant materials are covered by § 693 and therefore subject to public inspection absent any other requirement "by law" that they be kept confidential.[3] The statute applies to "all process, pleadings and papers relating to causes in the district court . . . , together with the records of the court." The statute does not specifically define "cause" or "records of the court." In construing these terms, we are guided by the usual rules of construction, which are designed to discern the legislative intent primarily by reference to the plain and ordinary meaning of the statutory language. See *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995) (we presume Legislature intended plain, ordinary meaning of language in statute).

The State advances a definition of "cause" limited to adversarial proceedings, thereby excluding a search warrant application, which by its nature is ex parte, i.e., brought by only one party — the State. The common definition of cause as a "suit, litigation, or action," Black's Law Dictionary 201 (5th ed. 1979), does suggest a contested proceeding, although appellants cite authority for a broader construction, encompassing any "legal process" seeking a right or remedy before a court of justice. See, e.g., *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 112 (1866) (rejecting contention that "proceeding does not ripen into a cause, until there are two parties to it," referencing Webster's definition of cause as "any legal process which a party institutes to obtain his demand, or by which he seeks his right or supposed right"). The typical search warrant procedure necessarily involves an application for judicial action, a judicial determination of probable cause, and the issuance of a warrant by a judicial officer, see

---

[2] Not incidentally for purposes of the case at bar, *Tallman* also held that "parties interested" under the statute include not only the parties to an action, but also the public at large, including a nonparty newspaper intervenor. 148 Vt. at 472-73, 537 A.2d at 427.

[3] We have chosen to frame the issue in this fashion in light of our decision that § 693 applies. The State's position is that if § 693 does not apply, disclosure is governed by the Public Records Act, 1 V.S.A. §§ 315-320, and its exception for records "dealing with the detection and investigation of crime." *Id.* § 317(b)(5). We noted in *Herald Ass'n*, 149 Vt. at 241 n.7, 544 A.2d at 601 n.7, that "[i]t is doubtful that the public records law applies at all to judicial records." We need not explicitly resolve the issue in this decision.

V.R.Cr.P. 41, all — in appellants' view — plainly part of a "legal process" before a court of law.

The parties are equally at odds over the meaning of "records of the court." The State argues that the phrase refers only to those documents actually generated by the court, such as orders and docket entries, whereas appellants assert that it also encompasses documents filed with the court in connection with a legal proceeding. This would necessarily include, they argue, the executed return and inventory lodged with the court after execution, and the underlying documents filed in support of the warrant. See V.R.Cr.P. 41(d).

We are persuaded on the whole that appellants have the better argument with respect to the meaning of "records of the court."[4] Certainly the warrant itself is a public record when filed, being in the nature of a court order, and therefore a "record of the court" even under the narrow definition proffered by the State. See Black's Law Dictionary, *supra*, at 1211 (defining search warrant as "[a]n order in writing, issued by a justice or other magistrate"). As to the supporting materials filed by the State, including the application, affidavit and inventory, the State's position that only records generated by the court fall within the scope of a "record of the court" is far too narrow, and is inconsistent with *Tallman*, which held that an affidavit — filed by the State — in support of a charging information was subject to disclosure under § 693. 148 Vt. at 472, 537 A.2d at 426.

We note, as well, that other jurisdictions have concluded that search warrants and related materials are public records.[5] In *Baltimore Sun*, 886 F.2d at 63-64, for example, the court considered precisely this issue (although in the context of determining whether a common- law right of access applied), concluding that after execution and return of a search warrant, "the warrant and all papers in connection with it" are "judicial records." Similarly, in *Newspapers of New England, Inc. v. Clerk-Magistrate of District Court*, 531 N.E.2d 1261 (Mass. 1988), the court ruled that under Massachusetts statutory law, "once the warrant and affidavit have been returned to the court, they become public documents." *Id.* at 1263; see also *Times Mirror*, 873 F.2d at 1214

---

[4] We need not, therefore, determine the precise meaning and scope of "cause" as it is used in the statute.

[5] This conclusion is also consistent with the new Rules for Public Access to Court Records, which take effect May 1, 2001. Although not applicable to the case under review, the rules' definition of a "record" is broad, and includes any papers "made or received pursuant to law or in connection with the transaction of any official business by the court." *Id.* § 3(a).

("while warrant proceedings have historically been closed to the public, most search warrant materials routinely become public after the warrant is served").

The State seeks to distinguish *Tallman* and the cases from other jurisdictions, in part, on the basis that there is no requirement in Vermont law that the affidavit be attached to the warrant on its return, as required by F.R.Cr.P. 41(g) and Mass. Gen. Laws ch. 276, § 2B. Although V.R.Cr.P. 41 requires that the return, accompanied by an inventory of any property taken, "shall be made promptly" to the court of issuance, V.R.Cr.P. 41(d), it lacks an express provision requiring the attachment and filing of supporting documents. We note, however, that V.R.Cr.P. 41(h), which sets forth the procedure for search warrant applications by means of electronic facsimile transmission (fax), provides that "[a]ll original documents and all papers transmitted by fax to the judicial officer to obtain the warrant, the papers received by the judicial officer by fax from the applicant, and the papers received by the applicant after retransmission by the judicial officer shall have the same status and authority as the original *and shall be filed with the court where the return and inventory are to be made pursuant to subsections (c) and (d) of this rule.*" (Emphasis added.) The underscored language plainly demonstrates that, upon return of the warrant to the issuing court, the rule contemplates that the warrant, the inventory, and all papers in connection therewith will be filed with the court.

In our view, therefore, documents upon which a court bases a decision to issue a search warrant, which are filed with the court, and which become a part of the case record subject to disclosure in connection with subsequent motions for return of property or suppression of evidence, see V.R.Cr.P. 41(e) & (f), must be considered a part of the "records of the court" under § 693. Accordingly, we conclude that appellants would be entitled to examine the nine search warrants and related materials that have been executed and returned to the trial court absent any superseding legal requirement that they be kept confidential.

The next step in our analysis, therefore, is to determine whether, and under what circumstances, a court may lawfully seal a search warrant and related papers under § 693. Appellants maintain that the statute's exception for documents "required by law to be kept confidential" is limited to statutory requirements of confidentiality, such as 13 V.S.A. § 5134 relating to grand jury proceedings. We are

not persuaded that the exception is so confined. The "law" of this state obviously includes more than the Constitution and the codes. For example, we have held that it includes rules issued pursuant to the Court's constitutional authority. See *Herald Ass'n*, 149 Vt. at 240-41, 544 A.2d at 601. It also includes the common law. See 1 V.S.A. § 271 (adopting common law as law of Vermont); *E.B. & A.C. Whiting Co. v. City of Burlington*, 106 Vt. 446, 459, 175 A. 35, 42 (1934) (noting that "the common law adopted in this State is the law of this State, and is to be administered as such by our courts"); see also *Rojo v. Kliger*, 801 P.2d 373, 381-83 (Cal. 1990) (construing statutory reference to "law of this state" as including common law). Furthermore, it is settled that statutory language of uncertain meaning will not be construed to change or abrogate common-law rules; such an intent must be expressed in clear and unambiguous language. See *Swett*, 164 Vt. at 5, 663 A.2d at 932; *Caledonian-Record Pub. Co. v. Walton*, 154 Vt. 15, 23, 573 A.2d 296, 301 (1990). Thus, absent any indication to the contrary, we must conclude that § 693 preserves any common-law exceptions to the presumptive right to examine court records.

The common law has long recognized that courts are possessed of an inherent authority to deny access to otherwise public court records when necessary to serve overriding public or private interests.[6] The classic statement of the rule was expressed by the United States Supreme Court in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), as follows: "It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* at 598; accord *In re Sealed Affidavit(s)*, 600 F.2d 1256, 1257 (9th Cir. 1979) (courts' power to seal search warrant affidavit derived from their "inherent power, as an incident of their constitutional function, to control papers filed with the courts"); *Newspapers of New England*, 531 N.E.2d at 1263 (recognizing court's "inherent authority to impound" court records); *State v. Cribbs*, 469 N.W.2d 108, 110 (Neb. 1991) (recognizing court's inherent supervisory authority to seal public court records); *Nast v. Michels*, 730 P.2d 54, 56 (Wash. 1986) (although common law provided access to court case records, trial court retained inherent supervisory authority to deny access to effectuate countervailing public or private interests).

---

[6] The authority to seal court records is maintained in the new Rules for Public Access to Court Records, § 7(a).

Although the high court in *Nixon* expressly declined "to identify all the factors to be weighed in determining whether access is appropriate," 435 U.S. at 599, many lower court decisions have since attempted to balance the trial court's inherent "supervisory authority" over judicial records against common-law or statutory rights of public access to court records. Indeed, several decisions have addressed the issue in the precise context of pre-indictment search warrants and related materials.[7] See, e.g., *In re Newsday, Inc.*, 895 F.2d at 78-79; *Baltimore Sun*, 886 F.2d at 65-66; *Times Mirror*, 873 F.2d at 1218-19; *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988); *In re Search of Office Suites*, 925 F. Supp. 738, 742 (M.D. Fla. 1996); *In re 2 Sealed Search Warrants*, 710 A.2d at 210; *Newspapers of New England*, 531 N.E.2d at 1263-64; *Cowles Pub. Co. v. Murphy*, 637 P.2d 966, 969 (Wash. 1981); *State v. Cummings*, 546 N.W.2d 406, 412-13 (Wis. 1996).[8]

■ Although their approaches differ in minor respects, these and other cases have developed a fairly uniform common-law standard under which a court may seal a search warrant and related materials. First, nearly all agree that the presumptive right of access to court records, including pre-indictment search warrant materials, may be overcome only by a showing that, as the court in *Cowles* stated, "a substantial threat exists to the interests of effective law enforcement, or individual privacy and safety." 637 P.2d at 970; see also *Baltimore Sun*, 886 F.2d at 65-66 (judicial officer may deny access when sealing is essential to preserve higher values and is narrowly tailored to serve that interest); *In re Search of Office Suites*, 925 F. Supp. at 742 ("the question becomes whether there [are] present compelling reasons for closure").

■ Second, the requisite showing of harm "must be demonstrated with specificity as to *each document*"; general allegations of harm are insufficient. *Hammock by Hammock v. Hoffman-LaRoche, Inc.*, 662 A.2d 546, 559 (N.J. 1995); see also *Cowles*, 637 P.2d at 970 (party who objects to disclosure of search warrant "must state specific reasons for

---

[7] As noted, the subjects of the warrants here have been arrested and charged, but indictments have not issued under the New Hampshire grand jury process.

[8] With the exception of *Times Mirror*, 873 F.2d at 1219, which declined to recognize any basis for access to pre-indictment search warrants, the above-referenced decisions generally acknowledge that, under constitutional, statutory, or common law, the public has a presumptive right of access to such materials absent an overriding demonstration of harm to public or private interests.

the need for confidentiality"); *In re Keene Sentinel,* 612 A.2d 911, 916 (N.H. 1992) ("The petitioner's right of access to the sealed records must be weighed and balanced against privacy interests that are articulated with specificity.").

■ Third, the courts have generally directed that secrecy should extend no further than necessary to protect the interests in confidentiality. Thus, the trial court must "determine whether these interests might be served by deletion of the harmful material." *Cowles,* 637 P.2d at 970; see also *Baltimore Sun,* 886 F.2d at 66 (court must consider giving access to "redacted version" of documents); *In re Search of Office Suites,* 925 F. Supp. at 743 (court must explore whether "there are alternative means available to protect the investigation, short of sealing the entire document"); *Hoffman-LaRoche,* 662 A.2d at 559 ("Documents should be redacted when possible . . . so that the protective order will have the least intrusive effect on the public's right-of-access.").

■ Fourth, in rendering a decision, the court must examine each document individually, and make fact-specific findings with regard to why the presumption of access has been overcome. See *Baltimore Sun,* 886 F.2d at 66 (court must examine affidavits and "make findings and conclusions specific enough for appellate review"); *In re 2 Sealed Search Warrants,* 710 A.2d at 211 (when court rules that search warrant must be sealed, "interest to be protected must be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered"); *State v. Cummings,* 546 N.W.2d at 414 (court must make "specific enough findings of fact on the record to allow for appellate review").

■ To ensure effectuation of these standards and requirements when the prosecutor requests that a search warrant, affidavit in support of warrant, and filed inventory be sealed, the judge — in the necessarily ex parte in camera proceeding wherein requests for warrants are granted — should determine specifically what information should be sealed and why. If a decision to seal is made, the court should issue a general order setting forth its decision in sufficiently broad terms that it does not reveal the contents of the subject materials, which order shall be made public. It should also enter a separate order containing specific factual findings and conclusions to support the decision to seal, which order, together with a record of the in camera hearing, shall be kept under seal. See

*Eberharter*, 713 P.2d at 712 (setting forth similar procedures for ex parte in camera review by issuing court).[9]

Assessed in light of these standards, the trial courts' decisions in this case must be deemed inadequate in several respects. There is no indication in the record before us that the trial courts that issued the original orders to seal engaged in any balancing process to determine if the interests asserted by the State were sufficiently compelling to outweigh the presumptive right of public access. Although the trial court that later heard and decided appellants' motion to unseal the records purported to apply a balancing test under a common-law right of access, it operated under the erroneous belief that these were not public records under 4 V.S.A. § 693, subject to impoundment only upon a compelling showing of harm to public or private interests. Hence, there is no indication in the record that the court applied an exacting standard, or indeed any particular standard, in evaluating the State's arguments for nondisclosure. Nor is there any evidence that it clearly placed the burden of demonstrating a compelling need for confidentiality upon the State; that it analyzed each document separately in light of the State's arguments; that it considered alternatives short of a blanket order of nondisclosure; or that it made any fact-specific findings determining precisely what information contained in the disputed materials would result in the kinds of harm advanced by the State. The record, in sum, contains no findings adequate for meaningful appellate review.

Accordingly, we conclude that the matter must be remanded to afford the trial court a reasonable opportunity to address the State's motions to seal the documents in light of the specific standards set forth herein. On remand, the court shall promptly examine each requested document in camera on the record with counsel for the State having an opportunity to argue the closure motion candidly and ex parte.[10] The court shall determine in its discretion whether and to

---

[9] When circumstances require, the court may temporarily seal a warrant and, as soon as practicable thereafter, conduct an in camera review and promulgate findings.

[10] As a prudential matter, we note that allowing counsel for appellants to participate in the in camera review under compulsion not to reveal information to their clients — as suggested in the concurring and dissenting opinion — would introduce an artificial barrier between appellants and their attorneys, and thereby undermine the lawyer-client confidence that our Rules of Professional Conduct are designed to ensure. See Vermont Rules of Prof'l Conduct, R. 1.3 cmt. (requiring that lawyer "act with commitment and dedication to the interests of the client"). Although a court is certainly empowered to order an attorney not to disclose information to a client, such orders should be

164

what extent the contents of each document shall be protected under seal. At the conclusion of the hearing, the court shall issue an order setting forth in general terms the reasons for its decision, and a separate order containing specific factual findings and conclusions, which order — together with the record of the in camera proceeding — shall be sealed.[11] In the event of an appeal from the court's

scrupulously avoided so as not to imperil the open and trusting dialogue that forms the foundation of the attorney-client relationship.

We recognize that this investigation has proceeded far beyond its status when the search warrants were first issued, and that Tulloch and Parker have both been charged with murder. Given that they have been charged and will be tried in New Hampshire, this decision does not address concerns that could arise if a Vermont prosecutor sought continuing ex parte communications with the court after probable cause had been found in Vermont. In such a situation, the interests of the defendant would need to be considered.

[11] It bears emphasizing that we are, in effect, returning the matter to the trial court to make the specific factual findings that should have been made in response to the original motions to seal that accompanied the State's search warrant applications. This is, by definition, an ex parte determination. See *Franks v. Delaware*, 438 U.S. 154, 169 (1978) ("The pre-search proceeding is necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence."); *Eberharter*, 713 P.2d at 711 (noting that prosecutor's motion to seal in conjunction with application for warrant is conducted in camera and ex parte); V.R.Cr.P. 41(a) (authorizing issuance of search warrant upon request of law enforcement officer or attorney for State). Thus, contrary to the views expressed in the concurring and dissenting opinion, it is necessary and proper that the in camera review be conducted on remand with only counsel for the State present, at least where no interests of the accused are involved. See n.10, *supra*.

In this case, once the court makes its initial findings and conclusions and orders documents to be maintained under seal, there will be no need to conduct another in camera review in response to a subsequent motion to unseal. The trial court may review its original findings in light of the returns and inventories and, based on those findings and any argument by the State and the petitioner, determine whether the need for nondisclosure continues. The concurring and dissenting opinion's reliance on *In re Keene Sentinel*, 612 A.2d 911 (N.H. 1992), is seriously misplaced. That case involved an application by the press for access to the records of long terminated ten-year-old divorce proceedings which were conducted in a public forum. *Id.* at 912. It provides no authority for the proposition that a trial court should normally conduct an adversarial in camera hearing on a motion to seal or unseal search warrant materials relating to a criminal investigation. Similarly, the federal decisions cited in the concurring and dissenting opinion involve Freedom of Information Act requests for documents unrelated to sealed search warrant materials.

"[A] warrant application involves no public or adversary proceedings: it is an *ex parte* request before a magistrate or judge." *United States v. United States Dist. Ct. for Eastern Dist. of Mich.*, 407 U.S. 297, 321 (1972). We echo the decision of the Delaware court in *2 Sealed Search Warrants*, 710 A.2d at 213, and "reject[] the expansive and novel

decision, no access to the documents or sealed order and record shall be granted until the matter has been finally resolved.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*[12]

**Morse, J.,** concurring and dissenting. I concur in all aspects of the Court's opinion except directing the trial court's in camera review be "with only counsel for the State present." This directive is uncalled for, in my view, for three reasons.

First, the issue was not addressed below or on appeal. At the hearing on the motion to unseal, appellants requested an in camera review with counsel for the parties and the intervenors present. The State did not speak to the issue, and nothing in the record indicates that the trial court ever considered the request. The issue having never been joined, we are jumping the gun to address it in the absence of a record, a trial court ruling, and adequate briefing.

Second, while the facts and circumstances of this case may well require an ex parte in camera proceeding, I do not believe that this is necessarily true of every case. Indeed, the seminal New Hampshire decision dealing with sealed court documents, *In re Keene Sentinel*, 612 A.2d 911, 917 (N.H. 1992), sets forth procedures that expressly direct the trial court to "separately examine each document in question *in camera* (in chambers with only counsel for the parties and for the petitioner [newspaper] present) on the record." The circumstances in *Keene*, involving a ten-year-old divorce case, may not have posed the same potential risks of disclosure that are present here, but I believe the trial court has discretion on the issue. A flexible rule allowing the trial court to determine who should be present and under what conditions makes the best sense.

A third reason for declining to adopt a blanket rule requiring ex parte review of sealed documents is that, by their very nature, ex parte proceedings give prosecutors a huge advantage in that they alone appear before the judge. That advantage, in turn, deprives the court — which must render an informed decision — of the best arguments that could be made on behalf of the party seeking access to the documents. This disadvantage has long been noted by federal courts in Freedom of

---

proposition that closure hearings must be had with regard to pre-indictment judicial authorizations for the sealing of search warrant documentation."

[12] As they are not applicable to the case at bar, we do not consider or address the provisions dealing with access to search warrants in the new Rules for Public Access to Court Records.

Information Act proceedings. See, e.g., *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 697 (D.C. Cir. 1977) (noting that ex parte in camera reviews of documents "are burdensome and are conducted without the benefit of an adversary proceeding"); *Ingle v. Department of Justice*, 698 F.2d 259, 264 (6th Cir. 1983) (noting federal courts' reluctance to conduct ex parte proceedings in FOIA cases), *abrogated on other grounds by United States Dep't of Justice v. Landano*, 508 U.S. 165 (1993). Because ex parte inquiries by definition are less rigorous and informative, I would — if anything — make them the exception, not the rule.

 Allowing counsel to participate does not defeat the purpose of the in camera proceeding. By keeping the adversarial nature of the process intact, the secrecy of it is not lost. A lawyer is an officer of the court and would be subject not only to disciplinary action under the code of professional responsibility, but contempt of court, or other sanctions, for unauthorized disclosure. See Vermont Rules of Prof'l Conduct, R. 3.4(c) (lawyer may not "knowingly disobey an obligation under the rules of a tribunal"); *id.*, R. 1.4 cmt. ("[r]ules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client"). Whatever awkwardness might be engendered between lawyer and client by the lawyer's withholding of information from the client pales in comparison to the advantage lost by the lawyer not participating at all.

Thus, the better approach in cases like this would be to allow the parties to address, and the trial court in its discretion to determine, the nature of the in camera review required. At best, the parties and the court may agree, in which case the matter will be put to rest. At worst, the issue will come to us on appeal, in which case we can render an opinion based upon an adequate record and informed briefing.

I have no quarrel with the Court's point that a search warrant application is of necessity ex parte, as is the trial court's initial ruling on a motion to seal. We are past that point here, however. The warrants have been executed and returned, and appellants have filed a motion to unseal. What might have appeared necessary to keep secret based upon the affidavits might now, in light of the returns and inventories, be amenable to disclosure. In these circumstances, I perceive no harm in affording the trial court the opportunity, in its discretion, to conduct an in camera hearing with all or some counsel present.