In re: Tony Taylor, No. 354-7-10 Wmcv (Wesley, J., Aug. 31, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                    **CIVIL DIVISION**
**Windham Unit**                                      **Docket No. 354-7-10 Wmcv**


**In re: Tony Taylor**


## ORDER GRANTING
## RULE 75 RELIEF


This is a V.R.C.P. 75 action challenging a determination made by the Vermont Department of Corrections ("the Department") denying an exemption from the Sex Offender Internet Registry ("SOIR") for Petitioner Tony Taylor. Following a pre-trial status conference on October 19, 2010, the Court issued an entry requiring the parties to submit memoranda of law addressing the standard of review and the burden of proof. Following requests for extensions made by each party, the pleadings were closed on April 13, 2011. In consideration of the authorities and arguments advanced by each party, and after further examination of the issues presented by the petition, the Court makes the following rulings.[1]

Petitioner posits the question: What does due process require when the Department considers an offender's petition for an exception to retroactive inclusion in the Sex Offender Internet Registry?[2] The Court concludes that Petitioner's constitutional arguments need not be addressed, however, because the Department failed to comply with the procedural requirements of the statutory and regulatory scheme itself. Cf. *In re Sealed Documents,* 172 Vt. 152, 155 (2001) (courts should refrain from deciding constitutional issues where case can be decided on statutory or other grounds). Specifically, the Court concludes that the statutory notes and administrative regulations require an individualized decision-making process with written findings explaining the decision in relation to specified criteria. The contemplated decision-making process is not intended to be overly burdensome. Nonetheless, the form letter denial with no findings specific to the Petitioner's case issued in this matter is plainly insufficient. Accordingly, this petition is **REMANDED** to the Commissioner with direction to revisit

---

[1] This procedure to which the parties acquiesced resulted in a record which the Court considers the functional equivalent of one created pursuant to V.R.C.P. 56. Thus, because there are no disputed facts suggested by either party, this opinion resolves the dispute framed by the petition as a matter of law requiring summary judgment.

[2] Petitioner maintains that due process in this instance requires that the State prove by clear and convincing evidence that his inclusion in the registry was justified, and afford *de novo* review upon a Rule 75 petition. The State disclaims Petitioner's right to *de novo* review in these proceedings, and insists that due process was not offended by the Department's administrative determination. For the reasons set forth in this opinion, the Court does not reach these issues, at least as a matter of due process analysis. However, the Court notes that, unless compelled as a matter of due process, and in the absence of any specific statutory grant of *de novo* review, a Rule 75 appeal is in the nature of certiorari and review is confined to the adequacy of the record under an abuse of discretion standard. See, *Ketchum v. Town of Dorset*, 2011 VT 49, ¶13; *Hunt v. Village of Bristol*, 159 Vt. 439, 441-42 (1992).

his determination and provide written findings explaining the Department's decision in a manner consistent with this opinion, within 60 days of the date of this Order.

*Statutory and Regulatory Authorities*

In 2009, the Vermont Legislature expanded the list of crimes for which inclusion in the Sex Offender Internet Registry (SOIR) is required. See 13 V.S.A. § 5401(10)(A). Furthermore, it made this expansion retroactive, such that previously convicted offenders would be included in the registry even if their crimes had not qualified them for inclusion at the time of conviction. See Historical and Statutory Notes to § 5401, 2009, No. 58, §11 ("Applicability"). It is apparent from the Notes that both the expansion and the retroactivity were required by federal mandate,[3] and that the amendment was enacted reluctantly, to avoid loss of federal funding, despite concerns about constitutionality and doubts about the reliability of using crime-of-conviction rather than actuarial tools to assess the risk of recidivism. See Historical and Statutory Notes, 2009, No. 58, § 1.[4]

To lessen the constitutional concerns and perceived unfairness of the federal mandate, the Vermont version of the law provides that offenders convicted of listed crimes who had successfully completed their terms of imprisonment and/or probation could petition for an exception based on successful reintegration into the community. See Historical and Statutory Notes, 2009, No. 58, § 11(3)(A). As required by the statute, the Department has adopted an administrative rule setting forth the criteria and procedures to be utilized in deciding these petitions for exceptions. See APA Rule # 09039, DOC Policy # 258(5) & (6) ("the Rule") (effective January 2010).

Subsection 5 of the Rule specifies that the following criteria should be considered in determining successful reintegration: (i) whether the person has had charges or convictions in the five years prior to the effective date of the rule (i.e., since January 2005) of a felony offense, an offense with a sexual element, or a probation/protection order violation; (ii) whether the person has successfully completed all recommended treatment; (iii) whether the person had any sex offenses prior to the offense on which the registry requirement is based; (iv) whether the person's current or prior probation/parole officer(s) provided a positive recommendation; (v) whether the person's family and other social supports are positive and prosocial; and (vi) whether the person's employment and residence status are stable. *Id.* at 5.

Subsection 6 then specifies the procedures to be utilized in evaluating successful reintegration. *Id.* at 6. The offender is required to submit a complete petition, including

---

[3]  See Adam Walsh Child Protection and Safety Act of 2006, adding Chapter 109B to Title 18, U.S.C.
[4]  For further background regarding this federal mandate and the problems it has caused for states, see Stephanie Buntin, "The High Price of Misguided Legislation: Nevada's Need for Practical Sex Offender Laws," 11 **Nev. L.J.** 770 (2011); Amy Baron-Evans, "Still Time to Rethink the Misguided Approach of the Sex Offender Registration and Notification Act," 20 **Fed. Sent'g Rep**. 357 (2008); Lara Geer Farley, "The Adam Walsh Act: The Scarlet Letter of the Twenty-First Century," 47 **Washburn L.J.** 471 (2008); Jacob Frumkin, "Perennial Punishment? Why the Sex Offender Registration and Notification Act Needs Reconsideration," 17 **J.L. & Pol'y** 313 (2008).

documentation of treatment completion and documentation of residence and employment for the previous five years. *Id.* at 6(a). Neither the statute nor the Rule makes any provision for the petitioner to request an evidentiary hearing, or to otherwise present evidence in support of the petition. Rather, the petition is reviewed by the Sex Offender Review Committee (SORC), which "*shall make written findings on each petition* for an exemption after review of a completed petition," and shall then deliver its written findings to the Commissioner. *Id.* at 6(c) (emphasis added). The Commissioner then reviews the SORC's written decision. *Id.* at 6(d). "*The Commissioner shall return to the SORC any decision in which the Committee has not provided a sufficient basis for review,*" in which case the SORC must provide further explanation. *Id.* at 6(e) (emphasis added). Additionally, the Commissioner "shall deliver" the SORC's written findings to the eligible offender/petitioner with his determination. *Id.* at 6(f).

### Factual Background

Petitioner Taylor was convicted in 2001 of sexual assault on a minor based on an uncoerced sexual encounter he had with a fifteen year old when he was nineteen. In May 2005, he was discharged from probation, without objection from the State, for satisfactory completion of all conditions. Four years later, though never previously subject to mandatory listing, he was notified that his offense had been added to the list of those for which inclusion in the Sex Offender Internet Registry (SOIR) was required. Petitioner was informed that he could petition for an exception if he could show he had successfully reintegrated into the community; and he did so, providing all the requested documentation. He then heard nothing further until he received a letter from the Department denying his petition "based on the fact that you have continued to have arrest and convictions for criminal activities and/or violations since your sex offense conviction." Nothing in this notice indicated what these arrests or convictions were or when they occurred; nor was there anything in the letter referring to any of the particular facts or circumstances of Petitioner's situation pertinent to the other factors the Department was required to consider. It is from this decision that Petitioner appeals.

### Analysis

Petitioner argues that as a matter of procedural due process, (1) the State should have to show by clear and convincing evidence that he has not successfully reintegrated into the community before putting him on the internet registry, rather than putting the burden on him to show that he has successfully reintegrated; and (2) review of the decision in this Court should be *de novo* rather than on the record. Although the Department gives Petitioner's arguments short shrift, it is the Court's view that these and other due process questions raised by the retroactive application of this law could be close and difficult to decide, particularly given the absence of any opportunity for the petitioner to present evidence in support of his claim for reintegration. Indeed, the unfairness and arguable unconstitutionality of retroactive application to offenders who have successfully completed their sentences is one of a number of obstacles to implementation that many states have encountered in trying to comply with the federal mandate. See, generally, the authorities cited *supra* in n.2. Numerous lawsuits

challenging the constitutionality of similar state laws based on the federal model have been filed, and at least one has been successful. See *American Civil Liberties Union of Nevada v. Cortez Masto,* 719 F.Supp.2d 1258 (D. Nev. 2008) (enjoining retroactive application of internet registry requirement on various constitutional grounds, including ex post facto and due process clauses).

Notably, however, neither the federal model nor the Nevada law at issue in *ACLU of Nevada* provided an opportunity to petition for an exception; and the District Court in *ACLU of Nevada* emphasized this shortcoming in concluding that the due process clause was violated. 719 F.Supp 2d at 1260; see also Baron-Evans, supra, at 357 (noting that the federal scheme provides no opportunity to petition for exception or removal). By contrast, the Vermont statutory and regulatory scheme *does* provide the opportunity to petition for an exception (albeit without a hearing), and this opportunity arguably mitigates the claimed unfairness and weakens the constitutional arguments against implementation – but only if the opportunity provided is a meaningful one.

The drafters of Vermont's statutory notes and regulations not only created the opportunity to petition for exception, but specified the criteria to be used and explicitly required written findings. Although the drafters did not elaborate as to exactly what should be included in the findings, the Court concludes that the only reasonable interpretation necessitates findings which address the criteria articulated in the Rule, that they be specific to the individual petitioner, and that they explain the decision in a manner that relates the findings to the criteria articulated in the Rule. Vermont's version of the Act was drafted well after those of Nevada and numerous other states, and it is reasonable to assume that our drafters were trying to avoid the unfairness and constitutional problems other states had encountered. Thus the Court infers an intent on the part of the drafters that the right to petition and receive a decision on the petition be meaningful, rather than a formality, and that the criteria and procedures were established for that purpose. Cf. *In re G.T.*, 170 Vt. 507, 517 (2000) (laws should be read to avoid constitutional difficulties if possible).

In this case, however, the Department failed to comply with its own Rule. Instead, it informed Petitioner of the decision on his petition in what appears to be a generic form letter given its lack of any findings particular to him. The letter made no reference to the criteria articulated in the Rule, and provided no explanation other than the general statement that the denial was "based on the fact that you have continued to have arrest and convictions for criminal activities and/or violations since your sex offense conviction."[5]

---

[5]  The underlying basis for this determination remains unclear. The Department attached to its pleading here a copy of the docket sheet from Petitioner's original conviction, without explanation. This docket sheet does show a probation violation in 2002; but to the extent the Department is suggesting this was the basis for their decision, without the need to consider anything else, the Court notes that it occurred well before the five year period the articulated criteria focus on. Petitioner acknowledges a drug-related conviction in 2005, which would be just within the pertinent period under the criteria. Assuming this acknowledged subsequent conviction underlies the Department's determination, a bare reference to it would not negate the need to consider other criteria and provide findings. In any case, neither the

Courts should generally refrain from deciding constitutional questions where a case can be decided on statutory or other grounds. *In re Sealed Documents,* 172 Vt. 152, 155 (2001). Thus, the Court concludes that, at least as an initial matter, the better basis for a decision here is not due process, but the Department's failure to follow the procedures required by the Vermont statutory and regulatory scheme. [6]

Accordingly, the Court will remand this case to the Department to allow the Commissioner and/or Committee to revisit the decision on Petitioner's petition and produce a written decision individual to his case, including written findings on the specified criteria in the Rule, and an explanation of the decision in relation to those findings and criteria. As Petitioner is already on the internet registry without compliance with the Rule, the Department should comply with this order in as timely a manner as possible, and no later than 60 days from the date of this Order.

### ORDER

This case will be **REMANDED** to the Department of Corrections to revisit the decision on Petitioner's petition and produce a written decision individual to his case, including written findings on the specified criteria in the Rule and an explanation of the decision in relation to those findings and criteria, within 60 days of this Order.

Dated at Newfane, Vermont, this _31st___ day of August, 2011.

_____
John P. Wesley
Presiding Judge

Petitioner nor the Court should have to speculate about the basis for the decision when a written explanation is required.

[6] Without addressing whether remand might be justified on other than constitutional grounds, the Washington Civil Division recently issued a similar mandate to the Department, requiring it to undertake new proceedings before the Committee within 60 days and either issue adequate findings or remove the petitioner's listing from the internet registry. The Court found that petitioner had a protected liberty interest, that the Department's findings failed to inform petitioner of the basis for denying his claim of community reintegration, that procedural fairness required that "the committee's determination should be preceded by an evidentiary hearing at which Mr. Coolidge has a fair opportunity to present evidence and confront the evidence presented against him," that the State had the burden of proving failure to reintegrate by a preponderance of the evidence, and that the Rule 75 appeal did not afford petitioner the right to *de novo* review. *Coolidge v. Commissioner, Vermont Department of Corrections*, No. 486-7-10 Wncv (Vt. Super. Ct. August 22, 2011) (Crawford, J.).