2012 VT 70

### In re GUARDIANSHIP of A.S.

[57 A.3d 716]

No. 11-183

¶ 1. August 14, 2012. Guardian appeals an order of the probate division directing that a court-ordered guardianship evaluation performed by Rutland Mental Health Services, Inc. (RMHS) be placed with the court under seal. Guardian argues that the court exceeded its authority, or abused its discretion to the extent that it had any, in directing RMHS to return the evaluation to the court to be sealed. We reverse.

¶ 2. Throughout primary and secondary school, the ward, A.S., qualified for special education services because of a developmental disability. In 2003, when she turned eighteen, the probate court established an involuntary guardianship appointing her parents as guardians. At the time, a voluntary guardianship was not permitted for persons diagnosed as "mentally ill or mentally retarded."[1] 14

---

[1] We use the term "mentally retarded" because the prior statute from which we quote used this language; we intend no disrespect. See 2011, No. 24; Doug Racine, Sec'y, Agency of Human Servs.,

V.S.A. § 2671(d)(1) (2002), *amended by* 2009, No. 97 (Adj. Sess.), § 9. In considering the involuntary guardianship, the court ordered RMHS to complete an evaluation. RMHS's report concluded that A.S. had a developmental disability allowing for a guardianship to be established.

¶ 3. In 2010, the Legislature amended the statute governing voluntary guardianships by removing the language that prohibited persons with mental disabilities from obtaining a voluntary guardianship, and instead providing that a person need only understand the "nature, extent, and consequences of the proposed guardianship." 14 V.S.A. § 2671(d)(2). Following this amendment, A.S. filed a motion seeking to "amend" her involuntary guardianship so as to create a voluntary guardianship. After a hearing in September 2010, the court ordered an evaluation of A.S. While the court ultimately granted the voluntary guardianship petition in January 2011, it was the evaluation stemming from the petition that precipitated the events leading to this appeal.

¶ 4. A short review of the statutory provisions pertaining to guardianships is helpful to understanding the issues. The probate division considers evaluations in determining whether to authorize either an involuntary or voluntary guardianship. The scope of the evaluation depends upon the type of guardianship being considered. In the case of an involuntary guardianship, the evaluation must "describe the nature and degree of the respondent's disability, if any, and the level of the respondent's intellectual, developmental, and social functioning." 14 V.S.A. § 3067(c)(1). The evaluation is then admitted into evidence at the guardianship hearing to help the court determine if the

Report on the Respectful Language Study (Dec. 1, 2011) http://www.leg.state.vt.us/reports/2012ExternalReports/274969.pdf

respondent is a person in need of a guardian. *Id.* § 3068(c). Modification or termination of an involuntary guardianship under § 3077 similarly triggers this same evaluation. *Id.* § 3077(c).

¶ 5. In contrast, following a hearing on a petition for a voluntary guardianship, the court may order an evaluation, but "[t]he scope of the evaluation shall be limited to whether the petitioner understands the nature, extent and consequences of the guardianship requested and the procedures for revoking the guardianship." *Id.* § 2671(e). Thus, as between the two types of guardianships, the evaluation conducted to establish a voluntary guardianship is less comprehensive than the evaluation conducted to establish, modify, or terminate an involuntary guardianship.

¶ 6. Following the request to convert A.S.'s involuntary guardianship into a voluntary one, the probate court issued an order for RMHS to evaluate A.S. Unfortunately, the desired scope of the requested evaluation was not entirely clear because the order cited provisions from both the voluntary and involuntary guardianship statutes. The order specified that RMHS was to determine if A.S. "understands the nature, extent, and consequences of a guardianship and the procedures for revoking the guardianship" — language taken nearly verbatim from § 2671, the statutory provision governing voluntary guardianship. But the order also cited language from § 3067(c), the statute governing involuntary guardianships, which, as noted, requires a more detailed evaluation describing "the nature and degree of the respondent's disability, if any, and the level of the respondent's intellectual, developmental, and social functioning."

¶ 7. In response to the court's order, RMHS conducted an evaluation addressing the nature and degree of A.S.'s disability, consistent with § 3067(c)(1) but

beyond the scope of an evaluation under § 2671(e). Guardian objected to the evaluation, alleging that it exceeded the scope of § 2671(e). He requested that the court return the evaluation to RMHS or forward it to A.S. and her guardians, but not retain any copy. The court, reasoning that the evaluation should have been limited to the issues enumerated in § 2671(e), ordered that the evaluation be returned to RMHS with the direction that any reference to the nature of A.S.'s intellectual, developmental, or social functioning be deleted. RMHS filed a motion for clarification asking the court for guidance on what to do with the evaluation and related case notes since RMHS was unclear about whether the evaluation triggered a legal obligation on its part under the Regulations Implementing the Developmental Disabilities Act of 1996.[2] RMHS asked if it should destroy the evaluation, return it to the court under seal, or maintain it as part of the ward's file.

¶ 8. On January 19, 2011, the probate court granted guardian's petition for a voluntary guardianship, appointing A.S.'s parents as guardians. On January 27, notwithstanding guardian's objection, the court ordered that the initial evaluation and related case notes be returned to the court under seal. Guardian filed a Vermont Rule of Probate Procedure 60(b)

motion to set aside the January 27 order, claiming it was beyond the jurisdiction of the probate court. On March 22, the court denied guardian's motion. This appeal followed.

¶ 9. On appeal, guardian argues that the probate court erred in denying his motion for relief under Rule 60(b) because the court lacked authority to order RMHS to return the records. He also argues that by doing so, the court precluded him from having an opportunity to correct the records under the Health Insurance Portability and Accountability Act (HIPAA). See 45 C.F.R. § 164.526. Finally, guardian asserts that the court did not adequately consider A.S.'s preference in violation of 14 V.S.A. § 3068a, and therefore acted contrary to the best interests of A.S. RMHS argues that the probate court had jurisdiction to order the record returned and sealed under § 3067(e) because appellant had filed a petition to amend an existing guardianship.

¶ 10. In general, we apply a deferential abuse-of-discretion standard in reviewing a motion for relief from judgment under Rule 60(b). *Richwagen v. Richwagen*, 153 Vt. 1, 3-4, 568 A.2d 419, 420 (1989). But because this case presents an issue of the proper construction of a statute, which is a question of law, our review is nondeferential and plenary. *State v. Koch*, 169 Vt. 109, 112, 730 A.2d 577, 580 (1999).

¶ 11. Guardian first argues that the probate court did not have jurisdiction to order RMHS to return the evaluation to the court to be placed under seal. Guardian reasons that the court's jurisdiction ended on January 19, 2011 — the moment it established the voluntary guardianship and dissolved the involuntary guardianship. Because the court did not order RMHS to return the documents until January 27, 2011 — at which time no guardianship proceeding was pending — he contends that the court no longer had

---

[2] Under the Regulations Implementing the Developmental Disabilities Act of 1996, an "agency shall conduct or arrange for full reassessment of an adult if there is reason to believe the person may no longer have substantial deficits in adaptive behavior, or may no longer have a developmental disability." Regulations Implementing the Developmental Disabilities Act of 1996, Rule 6.05, 4 Code of Vt. Rules 13 110 011-11, available at http://www.lexisnexis.com/hottopics/codeofvtrules. These regulations were amended slightly in March 2011, and the relevant provision is now contained in Rule 4.13.

jurisdiction pursuant to the guardianship proceeding, and thus, no longer had jurisdiction over the evaluation. Guardian emphasizes that the 2010 voluntary guardianship proceedings were actually a reopening of a 2009 proceeding in which A.S. had originally petitioned for a voluntary guardianship, but was denied because of her disability. RMHS asserts that because the court had previously established an involuntary guardianship, guardian's 2010 petition invoked 14 V.S.A. § 3077 — governing modification or termination of an involuntary guardianship.

¶ 12. The reasoning underlying these arguments becomes more apparent when they are considered in light of recent legislative amendments to the voluntary guardianship statute. Before July 1, 2010, a person who was mentally ill or "mentally retarded" could not secure a voluntary guardianship. 14 V.S.A. § 2671(d)(1) (2002). In a voluntary guardianship proceeding, the court could, in its discretion, order an evaluation of the petitioner; such evaluations were limited to two sets of questions: whether the petitioner was mentally ill or "mentally retarded" and whether the petitioner had the capacity "to understand the nature, extent and consequences of the guardianship requested and the procedures for revoking the guardianship." 14 V.S.A. § 2671(e) (2002). Pursuant to the 2010 amendment to the voluntary guardianship statute, a petitioner's mental illness or developmental disability are no longer impediments to a voluntary guardianship order, and any evaluation the court elects to require is limited to whether petitioner understands the nature of the guardianship and the procedures for revoking it. 14 V.S.A. § 2671(e). As the law stands today, only a person seeking to establish, modify, or terminate an involuntary guardianship is subject to a more in-depth evaluation along the lines of § 3067.

¶ 13. Here, the court concluded that the requested evaluation should have been limited to the less intrusive requirements specified in § 2671(e). Our resolution of the principal issue raised on appeal — whether the court lacked jurisdiction or abused its discretion in ordering RMHS to return the evaluation to the court to be sealed — does not require us to determine if the court erred in so concluding.

¶ 14. Before reaching the principal issue, however, we consider whether the appeal is properly before this Court. Because this is a direct appeal from the probate division, our review is limited to " 'pure' questions of law, the resolution of which do not depend upon factual distinctions and do not require review of the record." *In re J.C.*, 169 Vt. 139, 143, 730 A.2d 588, 590 (1999) (quotations omitted); see also 12 V.S.A. § 2551 ("The supreme court shall have jurisdiction of questions of law arising in the course of the proceedings of the superior courts in probate matters."). Ordinarily, when this Court entertains a direct appeal from the probate division, we require from the court a certified statement of the questions of law to be determined by this Court. V.R.A.P. 13(c). We have held, however, that where the issue is a simple one which has been fully dealt with in the parties' briefs, we can entertain an appeal without certified questions. *In re Fletcher*, 144 Vt. 419, 422, 479 A.2d 134, 135 (1984). In this case, as noted, A.S. has briefed a two-part issue on appeal: Did the probate court either exceed its jurisdiction or abuse its discretion as a matter of law in issuing the order requiring RMHS to return its original evaluation to the court to be sealed? We treat these as the certified legal questions presented to this Court.

¶ 15. Addressing the principal issue on appeal, we first reject guardian's argument that the court lacked jurisdiction to seal the initial evaluation. Whether mistaken or not, the initial, more comprehensive evaluation was undertaken pursuant to § 3067. To the extent that this provision may afford the probate court more wide-

ranging discretion with respect to the disposition of a § 3067 evaluation report than that court's general authority otherwise provides, the Legislature was presumably conscious of the heightened privacy concerns attached to such a comprehensive mental health evaluation. The court's authority with respect to the disposition of an allegedly erroneously requested evaluation report flows from the character of the report, not from the statutory regime the court arguably should have but did not apply in requesting an evaluation. The fact that the order requesting a § 3067 evaluation may have been a mistake — a matter we do not decide — does not negate the evaluation's status as a § 3067 evaluation. Thus, the probate court's authority with respect to the *disposition* of that report is governed by § 3067 in particular, as well as the probate court's general powers. See *In re Sealed Documents*, 172 Vt. 152, 160, 772 A.2d 518, 526 (2001) ("Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.") (quotations omitted).

¶ 16. Section 3067(e) plainly gives the probate division, apart from any inherent power it might have in that regard, explicit statutory authority to issue the kind of order it issued here. In particular, that provision states:

> Regardless of whether the report of the evaluator supports or does not support guardianship, the court shall provide a copy of the evaluation to the respondent, the respondent's attorney, the petitioner, the guardian upon appointment, and any other individual, including the proposed guardian, determined by the court to have a strong interest in the welfare of the respondent. The evaluation shall remain con-
>
> fidential, and recipients of the evaluation are prohibited from sharing the evaluation. *Notwithstanding the foregoing, the court may restrict access to the evaluation or portions of the evaluation upon objection by one of the parties or on the court's own motion.*

14 V.S.A. § 3067(e) (emphasis added). The use of the word "notwithstanding" demonstrates that the Legislature conferred upon the probate division an additional power to restrict access to § 3067 evaluations, or portions thereof, above and beyond the confidentiality and access restrictions previously enumerated in that subsection. Accordingly, we conclude that the probate division has jurisdiction under appropriate circumstances to make an order such as this restricting access to an evaluation.

¶ 17. The concurrence labels the probate court's order to seal the original RMHS evaluation an "expungement" of the record and then concludes that the court did not have either statutory or inherent authority to expunge agency records so as to allow the agency to avoid its legal obligation. The concurrence points out that the last sentence of § 3067(e) allows the court to restrict access to an evaluation *notwithstanding* the statute's earlier command that the court provide a copy of the evaluation to specified parties, thereby suggesting that the court's authority to restrict access to an evaluation is limited. Nevertheless, the statute explicitly authorizes the court to "restrict access to the evaluation," and that is what the court purported to do — and did — in this case. Legally, expungement is a term of art used almost exclusively in the context of statutes providing for the erasure of records and references to a particular criminal record when certain statutorily prescribed conditions are met. See Black's Law Dictionary 662 (9th ed. 2009)

(defining "expungement of record" as removal of conviction "from a person's criminal record"); see also *State v. Brander*, 930 P.2d 31, 36 (Mont. 1996) (concluding that "expunging an offense from the defendant's record" destroys "all traces of the criminal process relating to th[e] offense"). We decline to import that term into this case to bolster the notion that the court lacked authority to do something that it never indicated it was doing.[3]

¶ 18. Notwithstanding our conclusion that the probate court had authority to restrict access to the original evaluation, we agree with guardian that the court abused its discretion as a matter of law in ordering the sealing of this particular evaluation, given the circumstances of the case and the court's reasoning for doing

_____

[3] The concurrence suggests, in the alternative, that even though the probate court ordered the evaluation for its own use, copies of the evaluation and related case notes are not subject to any inherent authority that the court might have to restrict access to court records because they are not court records. But see *Rutland Herald v. Vt. State Police*, 2012 VT 24, ¶¶ 67-69, 191 Vt. 357, 49 A.3d 91 (Dooley, J., concurring and dissenting) (stating that source of records is irrelevant with respect to public records request because Public Records Act does not distinguish between originals and copies in determining what is public record); *Globe Newspaper Co. v. Dist. Attorney for Middle Dist.*, 788 N.E.2d 513, 519-20 (Mass. 2003) (stating that court records are not only those copies physically located at court but also copies held by parties "without regard to which entity has a copy"). We decline to address this issue insofar as it was not preserved below or raised by the parties on appeal. See *Rowe v. Brown*, 157 Vt. 373, 379, 599 A.2d 333, 337 (1991) ("Issues not raised on appeal are deemed waived.").

so.[4] The plain legislative purpose underlying § 3067(e) is to protect the privacy interests of those persons who are the subjects of evaluations dealing with highly personal and sensitive matters. Here, in deciding to seal the evaluation, the court stated as follows:

> As a result of [the evaluation being improperly before the court because it exceeded what was allowed by statute,] that's created an issue for Rutland

_____

[4] Ordinarily, as noted, consideration of a probate court order for abuse of discretion would require factual distinctions and a review of the record and therefore would be beyond this Court's authority. Because the ruling at issue resulted in a legal challenge to the court's jurisdiction and is ancillary to the probate court's adjudication of the merits of A.S.'s petition, and because review of the record on appeal is limited to consideration of the parties' positions and the probate court's rationale — as opposed to consideration of testimony or other record evidence, and as opposed to parsing of actual distinctions — we will address guardian's claim that the court abused its discretion as a matter of law in issuing the order to seal the evaluation. Cf. *In re J.C.*, 169 Vt. at 143-45, 730 A.2d at 590-92 (probate court rulings regarding whether parents showed good cause for not exercising parental responsibility and whether termination of their rights was in children's best interests were not appropriate for direct Supreme Court review); *In re Estate of Johnson*, 158 Vt. 557, 559-60, 613 A.2d 703, 704 (1992) (explaining that evidentiary ruling admitting evidence of testator's character, question involving waiver of Dead Man's statute, and question involving sufficiency of evidence to overcome presumption that lost will was revoked all turned on factual distinctions and thus were inappropriate for direct review by this Court).

Mental Health and has possibly put them in a position of mandatory reporting . . . . [T]he court's error created the issue and . . . the court, despite what [the guardian] thinks, does have jurisdiction to correct the order by ordering the return of the initial evaluation and all notes to be placed in the court record under seal. And the court has jurisdiction to do that and *that would relieve Rutland Mental Health of their mandatory reporting requirement that there would not be an issue there but for the mistake of the court.* Therefore, *over the objection of [the guardian],* I'm going to order . . . that Rutland Mental Health return the original evaluation and all notes and records of that evaluation to the court to be placed under seal.

(Emphasis added.)

¶ 19. In exercising its discretion, the court did not consider the privacy interests of the ward or any other confidentiality interests, as contemplated by § 3067(e). Rather, the court's sole expressed concern was that RMHS might have a legal obligation to take further action with respect to A.S. than it would not otherwise have had if the evaluation had been limited to what was permitted under § 2671. In the context of this case, this concern does not provide an adequate basis for the court's order to seal the evaluation. See *Jenson v. Puste*, 801 N.W.2d 639, 641-42 (Mich. Ct. App. 2010) (stating that to extent "trial court has discretion to seal court records, we review its decision for an abuse of discretion," which occurs "when its decision falls outside the range of reasonable and principled outcomes"). Although the court may have believed that A.S.'s continued receipt of benefits could be threatened if

RMHS concluded that the evaluation triggered a legal obligation to reevaluate her, there was no evidence or findings on this point.[5] Significantly, the court ordered the evaluation sealed over the explicit and strenuous objection of guardian, who was legally authorized and obligated to protect A.S.'s interests and who stated his desire to handle the matter directly with RMHS. See 45 C.F.R. § 164.526(a)(1) (giving individuals "the right to have a covered entity amend protected health information or a record about the individual"). There is no basis to believe that guardian was acting contrary to A.S.'s best interests in this regard. Under these circumstances, the court abused its discretion as a matter of law in ordering that the evaluation be sealed.

*Reversed and remanded.*

¶ 20. **Dooley, J.,** concurring. In my view, the probate court had no authority to issue the order it did. The authorization to seal court records to protect confidentiality does not grant a court the power to rewrite history by eliminating any record of an event so that it never occurred. I therefore reject the majority's premise that this order was a matter of discretion for the probate court. Because I agree, however, that the probate court's order must be overturned, I concur with the majority's disposition of this case.

¶ 21. To put this decision in perspective, we need to distinguish two circumstances.

---

[5] We offer no opinion on the relationship between RMHS's potential obligations under the Regulations Implementing the Developmental Disabilities Act of 1996 and its statutory obligation to maintain the confidentiality of the evaluation that is the subject of the appeal. See 14 V.S.A. § 3067(e) ("The evaluation shall remain confidential, and recipients of the evaluation are prohibited from sharing the evaluation.").

638

The first is where court proceedings are confidential, and all court records are sealed from public disclosure. An example is a juvenile proceeding. The second is where a court action — for example, a criminal conviction — is expunged and all record of the action is sealed. The overt purpose of this second circumstance is to change court history for beneficial purposes. This case involves an attempt to perform an expungement, that is, to change history. Although the Legislature has authorized expungement by courts in very limited and special circumstances — all involving expungement of criminal convictions and records of criminal proceedings — it has not done so here, and it has never authorized expungement in order to interfere in a relationship between a federally funded social agency and the federal agency that funds it.

¶ 22. The purpose, and the hoped-for effect, of the court's actions are clear from the record. RMHS filed the motion to clarify what action it should take with respect to the original evaluation and related case notes, stating that under regulations implementing the federal Developmental Disabilities Act it is obligated to do a full reassessment of a person if there is reason to believe the person is no longer developmentally disabled. It suggested that this obligation would go away if it were directed to destroy the original evaluation and related case notes. As the lawyer for RMHS said at the hearing, its obligation would not exist if RMHS did not "have any documentation." The court suggested the alternative that it seal the evaluation and the notes. The guardian opposed this suggestion arguing that it did not accomplish the objective, preferring to destroy or contest the evaluation. The probate court imposed its suggested alternative.

¶ 23. Despite the nature of the action we are reviewing, the majority concludes that 14 V.S.A. § 3067(e) "plainly gives the probate division . . . explicit statutory authority to issue the kind of order it issued here." *Ante,* ¶ 16. I wholeheartedly disagree with that assessment. The statute on which the majority relies is "plainly" of the first type described above. It is not an expungement statute and is certainly not a statute allowing expungement so that a mental health center does not have to comply with its obligation to its federal funding source.

¶ 24. In relevant part, § 3067 — the provision relied upon by the majority — states:

> Regardless of whether the report of the evaluator supports or does not support guardianship, the court shall provide a copy of the evaluation to the respondent, the respondent's attorney, the petitioner, the guardian upon appointment, and any other individual, including the proposed guardian, determined by the court to have a strong interest in the welfare of the respondent. The evaluation shall remain confidential, and recipients of the evaluation are prohibited from sharing the evaluation. Notwithstanding the foregoing, the court may restrict access to the evaluation or portions of the evaluation upon objection by one of the parties or on the court's own motion.

14 V.S.A. § 3067(e). The majority opinion reads the last sentence as authorizing the kind of expungement order issued by the probate court, including the direction to expunge the notes. "Plainly," the third sentence has a more limited purpose, as an authorization to restrict the access to the evaluation provided in the first sentence. The opening words of the third sentence — "Notwithstanding the foregoing" — show that purpose. The sentence is restrictive, not expansive as the majority holds. Its meaning is plain — despite

the general directive in the first sentence to provide copies to the listed parties, a court has discretion not to do so where circumstances require. There is nothing in the language to support use of the statute for expungement. It is wholly unlike the expungement statutes the Legislature has adopted. See, e.g., 13 V.S.A. § 7041(e) (providing for expungement of criminal record when court imposes deferred sentence and defendant successfully fulfills terms of probation).

¶ 25. There is nothing in the context of this statute to suggest that one of its purposes is to allow a mental health agency to expunge its work product for purposes unconnected with the privacy interests of the ward. Apparently, the court ordered an evaluation pursuant to 14 V.S.A. § 3067(a), and the Department of Mental Health chose RMHS to perform that evaluation under contract. RMHS is not a party to the guardianship proceeding. The evaluation is already confidential under § 3067(e). While, as stated above, the statute describes the limited persons to whom the evaluation should go, and authorizes the court to restrict even this limited access, it never mentions copies of the report retained by the evaluator.[6] There is nothing to suggest that it intends the court to regulate the relationship between the evaluator and federal or state governmental agencies.

¶ 26. Apart from the general language of statute and the context, the primary evidence that it was never intended for this use lies in an aspect of the court's order that the majority ignores — the sealing of the notes. From the beginning, RMHS made clear that the sealing of all copies of the evaluation was not enough;

the court had to seal the notes made by the evaluator from which the report was derived. As long as the notes existed, there was a paper trail on which the agency would be required to act under the federal law. Put another way, history could not be truly revised unless the notes were sealed or destroyed. Based on the RMHS representation, the probate court ordered RMHS to deliver the notes to the court for sealing.

¶ 27. The notes were not even arguably a court record; nor are they mentioned in § 3067(e). The court had no power to order RMHS to turn over the notes. Correcting this obvious error, however, unravels the whole order because its purpose is defeated. It demonstrates that the statute creates a confidentiality provision, not an expungement authorization.

¶ 28. I am even less persuaded that the probate court had inherent power to expunge the documents. The majority suggests that right based on a quote from *In re Sealed Documents*, 172 Vt. 152, 160, 772 A.2d 518, 526 (2001), which is, in turn, a quote from *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). The quote itself shows that it is far more limited support than the majority suggests and needs. It is limited to "judicial records." It is limited to instances where "court files might have become a vehicle for improper purposes." It is discussing sealing of records, not expungement of actions of a person or agency. The authorization in the quote is far from the expression of an inherent right to expunge agency records in order that the agency can avoid a legal obligation.[7]

---

[6] In fact, because the evaluator is not a recipient of the evaluation, and thus is not subject to the confidentiality requirement under the statute, the evaluator has no "statutory obligation" under § 3067(e) to keep the copies confidential.

[7] There is a split of authority on whether state courts have the inherent authority to expunge judicial records, and, if so, under what circumstances. Compare *State v. Chesley*, 2004 MT 165, ¶ 17, 92 P.3d 1212, with *State v. S.L.H.*, 755 N.W.2d 271, 275 (Minn. 2008). That split need not be resolved here, primarily be-

¶ 29. I know that the probate court acted under the impression that it was correcting its own mistake. It cannot, however, put the genie back in the bottle. A court's power to correct mistakes does not grant it the power to erase what has already been done. Cf. *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) ("The power to correct erroneous records does not imply ability to revise the substance of what transpired."); *In re Trahan*, 460 B.R. 207, 211 (Bankr. C.D. Ill. 2011) ("There is no error in this Court's records to be corrected. Granting . . . relief here would be rewriting history."). Here, the probate court may wish that it had not ordered the evaluation that it did, but it cannot therefore make the evaluation disappear.

¶ 30. As one court has explained in a slightly different context, "[i]f an agency errs, the right response is not to rewrite history, changing the record in Orwellian fashion to pretend that it reached some other conclusion." *Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994). My reaction to this case is similar. Even if the court's initial request or RMHS's initial evaluation were erroneous, the court had no authority to order that all evidence thereof be collected and sealed up. This was not an abuse of discretion because the court did not have discretion in the first place.

_____
cause these are not judicial records — the judicial records are already sealed pursuant to the statute. I note that in *State v. Motchnik*, 149 Vt. 113, 114, 539 A.2d 548, 548 (1987), this Court held that a defendant might have a remedy to expunge arrest records, which are not judicial records. It is clear from the claim in that case and the federal authority on which the decision relies, however, that expungement of arrest records is a possible remedy for a due process violation, and not a generally available judicial option.

¶ 31. I am authorized to state that Justice Burgess joins this concurrence.