*Hulstrunk v. Ultracell Insulation, LLC*, No. 110-7-18 Oecv (Harris, J., Oct. 11, 2018).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Orange Unit | CIVIL DIVISION<br>Docket No. 110-7-18 Oecv |

| | |
|---|---|
| William Hulstrunk,<br> Plaintiff<br><br>v.<br><br>Ultracell Insulation, LLC,<br> Defendant | |

### ENTRY ORDER AS TO CONVERTED MOTION TO DISMISS
### AND AS TO
### PROPOSED STIPULLATED PROTECTIVE ORDER

Defendant, Ultracell Insulation, LLC ("Ultracell") filed a supplemental memorandum in support of its motion for summary judgment and a proposed stipulated protective order (signed by both parties and their counsel) for the court's consideration[1]. The court addresses each of them as they relate to this stage of the litigation.

**Supplemental Submission in Support of Defendant's Motion for Summary Judgment**

Ultracell originally filed a Rule 12 motion to dismiss, but provided the court with materials in addition to the pleadings in support of its motion. As Ultracell notes in its 10/2/18 recent filing, in its 9/18/18 Order the court converted that motion to one for summary judgment, and as required by Vermont case law. The court gave the parties (in particular the Plaintiff) notice of its conversion of the motion. Such notice in effect forewarns the responding party (Plaintiff here) of its opportunity (and obligation) to provide additional materials as it responds to the motion. Where a movant frames its motion as one for judgment on the pleadings alone,

---

[1] Strictly speaking the "Stipulated Protective Order" was filed with the court with no separate Rule 7(b)(1) motion to approve it. The document has the parties' counsel signatures (showing it is a stipulated agreement), but no court signature line. In its provisions, the document facially has some court "findings". While the court approves aspects of the proposed order, as discussed in this opinion, such approval is subject to the limitations described in this order, and only the findings made in this entry order are being made as to the requested order.

normally the responding party must base its opposition on the allegations of the pleadings, and has no right (or obligation) to adduce facts to rebut the claimed factual assertions of the moving party that involve alleged facts not contained in the pleadings. In deciding to convert the motion to one for summary judgment, the requirement that the court give the nonmovant notice of the conversion, is intended to alert the nonmovant that [a] the court is considering the materials provided by movant, outside of the pleadings, [b] the summary judgment standards will apply to the motion, and consequently [c] the non-movant has the opportunity (and obligation) to provide the court with any non-pleading materials nonmovant believes will raise material issues of fact in response to the pleadings and alleged undisputed material facts the movant has presented to the court.

Strictly speaking, the motion conversion allows the non-movant, 30 days instead of 14 days (plus the three days after service – see V.R.C.P. 6, 56, 78) to make its opposition, and the movant 14 days (plus three days after service, *Id.*) to file its reply brief.

Ultracell here has in essence re-filed its motion as a newly supported summary judgment motion, as its "supplemental" submission was filed before any opposition memo by Plaintiff.

Because the court set out its initial analysis of certain case issues in its prior order, the court allows Ultracell the opportunity to have its now "supplemented" motion as its original summary judgment filing. Plaintiff shall have 33 days from that filing (presuming the three day provision of Rule 6 applies - V.R.C.P. 6 and 56) to file its opposition memo, and thereafter, Defendant 14 days (plus three days after service as applicable- V.R.C.P. 6 and 78) to file its reply memo.

As to Defendant's request to have its entire motion for summary judgment sealed, the court denies that request. The court and provides opportunity for limited portions of the court filings to be sealed, as further described below under the court's analysis of the proposed stipulated protective order.

### Proposed "Stipulated Protective Order"

The proposed Stipulated Protective Order is designed to provide a flexible and appropriate means for the parties to exchange and use actual and/or potential trade secrets, and sensitive/ proprietary financial information. It allows this litigation to fairly proceed, with such materials protected against disclosure and use from the opposing party, the public or third parties, where such disclosure or use would create substantial economic harm or damage to the producing party.

While the court extends considerable latitude to the parties as to how they fashion and protect information and materials they exchange in discovery and trial or hearing preparation, competing public interests are at stake whenever claimed protected materials may be used in court.

Vermont courts, and in particular civil division proceedings, are generally open to the public. When a document is submitted to the superior court, the court possesses the judiciary's common law "supervisory power over its own records and files and access has been denied where court files might have become a vehicle for improper purposes." *In re Sealed Documents*, 172 Vt. 152, 159 (2001) (internal quotation omitted), Under the Vermont Rules for Public Access to Court Records, as to materials the parties choose to file in court, the presumption and starting proposition is that court records are "open" and available to the public. See Vermont Rules for Public Access to Court Records ("VRPACR"), Rule 6(a). This presumption underscores and helps advance the goal of accountability to the public. As the Reporter Notes to VRPACR Rule 1 state, "[t]he judiciary, like the other branches of state government, is accountable to the public. Open access to its records and proceedings is essential to maintaining public trust and confidence in the operation of the court system." The presumption of public access to court records also applies in the federal court system, based on similar principles. See example, *Westmoreland v. Columbia Broad. Sys., Inc.,* 752 F.2d 16, 23 (2d Cir.1984) ("Public access to civil trials enhances the quality and safeguards the integrity of the factfinding process, fosters an appearance of fairness, and heightens public respect for the judicial process.") (internal citations and quotation marks omitted).

The VRPACR has certain exceptions to the open records presumption. Included is VPRACR Rule 6(b)(35), allowing for an exception for "any other record to which public access is prohibited by statute".

As the parties' proposed stipulated protective order notes, under the Vermont Trade Secrets Act (Title 9, Chapter 143, §§ 4601 - 4609)("VTSA") courts may enter protective orders sealing certain court records to help preserve the secrecy of trade secrets.

Under the VTSA, "trade secrets" are defined as follows:

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(A) derives independent economic value, actual or potential, from not being  generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

3

(B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'

§ 4601(3).

In the context of court proceedings and court records, the VTSA statute, at § 4605, allows the court to prohibit public access to certain court records:

> In an action under this chapter, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

While the VTSA generally authorizes the court to seal court records with "trade secrets", the VRPACR, at Rule 7(a), provides exceptions to public access to court records should be based on "good cause specific to the case before the judges and exceptional circumstances".

Given the presumption of public access to court proceedings and records, in entering protective orders to protect trade secrets, the court should be cautious against ordering overly broad orders to seal documents filed in court. See example, *In re Manchester Square Partners*, L.P., 2012 WL 3064512, Docket 471-11-10 Bncv (1/19/12)(Hayes, J.)(denying motion to seal, as a trade secret, certain information about commercial property that was the subject of a property tax appeal, concluding that when it comes to records filed in the court, under the principles behind the VRPACR the "public disclosure of trade secrets in the context of *judicial* records is generally one of openness, and should only be overcome in exceptional circumstances") (emphasis in original).

Even when a particular item is found to constitute a "trade secret" that should be protected, this does not mean that any document that makes reference to such a trade secret item also needs protection. For example, inclusion of a single affidavit exhibit containing trade secrets, in an affidavit, that is filed with a motion and a host of other materials, does not render the entire motion and all materials filed in support of the motion a "trade secret" from which public access should be barred. In the example given, a protective order that seals the affidavit exhibit may suffice.

The court turns to the parties' proposed Stipulated Protective Order. In essence its two categories of "Protected Material" include information and documents that the Producing Party

4

claims are or may be trade secrets[2]. The proposed Stipulated Protective Order is structured in essence so each party may designate claimed trade secrets, and have the opposing party honor such initial designation, while reserving the right to later challenge such designation under certain circumstances – such as if the Protected Material may be filed with, or used in, this court proceeding. See proposed Stipulated Protective Order at pp. 14 to 16.

There is a distinction between the principles behind the parties stipulating to a protective order to guide <u>discovery</u> versus the public access principles that come into play when records and information are used in <u>court proceedings.</u> As Judge Hayes observed in *In re Manchester Square Partners, supra*:

> The fact that a protective order was issued in this case has little bearing on whether this motion [to seal certain court-filed documents] should be granted under the Vermont Rules for Access to Court Records. Protective orders are issued liberally to aid in the discovery process, and allow all parties to obtain full and fair discovery. While protective orders are issued liberally to encourage full disclosure among parties, very different standards apply to information presented in court proceedings.

See also *Green Mountain Chrysler Dodge Jeep v. Crombie,* 2:05-CV-302, 2007 WL 922255 (D. Vt. Mar. 23, 2007) (Sessions, Chief Judge)(*"Crombie I"*), slip op. at *3 (noting the fact a document  or portion of a document has been designated as a trade secret under the VTSA  for discovery purposes does not answer the  ultimate question if it is entitled to protection when weighed against the interests of public access to court documents).

While the court gives latitude to the "Protected Material" status the parties may use in designated actual or claimed trade secrets in their discovery and court proceeding preparation, the court must consider the public assess issues when items are used in open court proceedings.

Judge Hayes, in *Manchester Partners, supra*, and Judge Sessions, in the follow up opinion to *Crombie I* above, namely, *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie,* 205-CV-302, 2007 WL 1074933 (D. Vt. Apr. 6. 2007) (*"Crombie II")*, required a specific showing to trade secret designation status and applied an "exceptional circumstnaces" showing standard to overcome the presumption of public access to court records.  See also, VRPACR, Rule 7(a).

Moreover, overly broad use of trade secrets designations leads to other practical results when the court, in a proceeding, has to make rulings, that should be available to the public, using secret information submitted under seal.   Making rulings based on broadly claimed trade secrets

---

[2] The court's use of the term "trade secrets" refers to the term as defined in the VTSA.

and information not available to the public interferes with the public's strong interest to see and understand how their public courts decide disputes, such as construing contracts and commercial transactions, and applying the law to disputes.   See *Crombie I* at \*7; *Manchester Partners, supra*.

In carrying out its duties, to afford public access to court records, while appropriately limiting public access exclusion for trade secrets under the VTSA, the court applies these principles and rulings:

1. Generally the court will accept the parties' designations of "Protected Materials", where such designations are stipulated to or not opposed by the non-"Producing Party" for their discovery material exchange purposes. The Stipulated Protective Order is approved as an order in that respect.  Obviously if a dispute arises as to the trade secret status of "Protected Materials" the court can decide the issue on motion. While such a motion is pending the court will treat the purported "Protected Materials" as trade secrets, to be placed under seal, until the motion as to their status is decided.

2. In making any other court filings containing "Protected Materials" that ta party claims are trade secrets, the filing party is to identify the portions of the filing (memos, affidavits, specific exhibits) the filing party (or Producing Party) contends constitute trade secrets, for which the filing party requests the court to place under seal.   A particularized description of why the party clams "trade secret' status for certain information needs to be provided. This will allow the court to conduct its initial seal request review.

3. Parties' submissions, to explain why court filed materials should be treated as "trade secrets" must be made within 15 days of the court filing. The court will hold filed materials, as to which "trade secret" designation is claimed, temporarily restricted from public access until the court makes its *in camera* review.

4.  The court makes these initial general observations as to what may constitute "trade secrets":

   A. Memos or affidavits that merely identify the existence or general nature of other "Protected Materials" trade secrets  are unlikely to be approved as a sufficient trade secret to warrant placing the document making such a reference under seal. The very (public) nature of this action includes claims by Ultracell that it has proprietary trade secrets, that its restrictive operating agreement provisions are meant to protect, and which are or may be disclosed or used by Plaintiff in contradiction of those protective provisions.  A court-filed document making reference to the ***existence*** of, for example, pricing strategies or product

specifications, is not itself a trade secret. The internal pricing policy memo or in-house technical product specification manual, can be trade secrets.

    B.  The court will not afford automatic "trade secret' statue to routine type LLC organizational documents (operating agreements, unit purchase agreements) merely because those types of documents are not generally publicly available. All kinds of non-public contracts and agreements are routinely litigated in court, and the fact a normally non-public document may become publicly available does not typically fall within the "formula, pattern, compilation, program, device, method, technique, or process" formulation of the trade secret statute. See *Manchester Partners, supra* (noting information about company product lines are much more in keeping with traditional definitions of trade secrets than the broad range of information, about the operation of a commercial rental property, for which protection was sought). Public access to a document showing the structure of a LLC, unlike a technical product specification sheet, has minimal "independent economic value that is not readily ascertainable to others" which is a component of trade secret designation. *Dicks v. Jensen*, 172 Vt. 43, 47 (2001).

5. The court may in some instances seal a document that contains Protected Material that includes a protected trade secret, but then have the clerks make a copy of that document (with the Protected Material trade secret content redacted) to place in the non-sealed court file. For example, if a 40 page motion brief that has a small portion describing in detail the content of some sensitive proprietary information which might be used if the claimed covenant not to compete is not enforced, the court may seal the original brief (even the relevant page(s)), but make part of the public file a redacted version of the brief with the Protected Material/ trade secret portion redacted.

6. The Parties are free to confer and discuss other approaches they would like the court to use to review and make rulings on VPRACR Rule 6(b)(35) trade secret designation requests.

7. The court will preliminarily hold for *in camera* review, Defendant's motion for summary judgment, with its attachments, for Defendant to have 15 days from the date of this order, to provide proof of "trade secrets" designation status for materials filed with its motion.

Electronically signed on October 10, 2018 at 05:00 PM pursuant to V.R.E.F. 7(d).

_____

Michael J. Harris
Superior Court Judge